## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                           **3:02cr110/RV**
                                                  **3:07cv386/RV/MD**

**BRIAN A. PUGH**

---

## AMENDED REPORT AND RECOMMENDATION[1]

      This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 131). The government has filed a response (doc. 137) and the defendant has filed a reply (doc. 146). Defendant has also filed an amendment to his motion (doc. 150) to which the government has responded (doc. 152) and the defendant has replied (doc. 160). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that

---

[1]This amended recommendation is entered due to the Eleventh's Circuit's remand of this case. After his § 2255 motion was denied, defendant appealed, and the appellate court remanded for consideration of defendant's claim that following *Begay v. United States*, 553 U.S. 137 (2008) and *United States v. Archer*, 531 F.3d 1347 (11ᵗʰ Cir. 2008), his prior conviction for possession of an unregistered firearm should no longer be considered a "crime of violence" for purposes of Sentencing Guidelines §§ 2K2.1 and 4B1.2. (Doc. 183). This claim was raised by the defendant in an amendment to his motion to vacate (doc. 150) but was not considered in the court's initial recommendation. The oversight was likely due to the fact that the court's paper file does not contain either defendant's motion to amend (doc. 150) or his reply to the government's supplemental response. (Doc. 160). The government's response, having been filed electronically, is also not in the paper file. Thus, reliance on the paper file for reviewing defendant's claims, rather than the official electronic record, resulted in overlooking of the amended claim when the original report and recommendation was prepared. For procedural purposes, the court has merely incorporated its review of the remaining claim into the original report and recommendation, which has otherwise not been substantively altered.

defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I. BACKGROUND

### A. Procedural History

Defendant was convicted of a violation of 18 U.S.C. § 924(g)(1), being a felon in possession of a firearm, in the Southern District of West Virginia, on August 17, 1992, and sentenced to a term of 96 months imprisonment. (R99-1).[2]  After completing his term of imprisonment, he was placed on supervised release.  On September 9, 2002, he was arrested in the Northern District of Florida and again charged with possession of a firearm by a convicted felon and taken into state custody.  (Pre-Sentence Investigation Report, "PSR" ¶ 2). Jurisdiction over the defendant was transferred from the Southern District of West Virginia to this court. (R99-1).  Defendant was arrested pursuant to a warrant for VOSR, after which he appeared before the undersigned on October 23, 2002 and was ordered detained pending the disposition of the VOSR.  (PSR ¶ 3).   He was found guilty of violating his supervised release on January 22, 2003, his supervised release was revoked, and he was sentenced to 21 months imprisonment with credit for time served in federal custody since September 9, 2002.  (*Id.*).

On November 19, 2002 defendant was charged in a separate two count indictment with possession of a firearm by a convicted felon and possession of ammunition by a convicted felon.  (R110-1).  On December 4, 2002, he was ordered detained pending disposition of his case.  On December 27, 2002, defendant filed motions to sever the trial of counts one and two of the indictment, and to dismiss the indictment.  (R110-19 & 20).  After a hearing, the district court denied the motions,

---

[2]Record citations will be either to "R99" or "R110" and the corresponding docket entry to denote case 3:02cr99/RV, the case involving defendant's violation of supervised release ("VOSR") or this case, 3:02cr110/RV, the new substantive law violation for possession of a firearm by a convicted felon.

and granted defense counsel Thomas Keith's oral motion to withdraw as counsel.[3] (R110-80; R110-24). CJA attorney Stephen Eric Sutherland was appointed on January 13, 2003 in his stead. (R110-25).

On January 22, 2003, the grand jury returned a superseding indictment charging the defendant with the same crimes as the original indictment, but amending the citation to the penalty provision applicable to the case. (R110-32). The superseding indictment charged violations of 18 U.S.C. §§ 922(g) and 924(a)(2). Defendant filed a renewed motion to sever counts one and two of the superseding indictment. There is no record of a ruling on this motion, but the case proceeded to trial on both counts. On February 7, 2003, three days before the jury trial was set to begin, counsel filed a motion for continuance at his client's request. (R110-45). Defendant had apparently been injured while he was being transported in shackles and handcuffs. Defendant stated that he had been injured during a sudden vehicular stop, and that he was in such great pain due to his injuries that he would be unable to attend or remain seated for trial. The court denied the motion for a continuance. (R110-82 at 2-13; R110-49). On February 12, 2003, after a three day trial, the jury convicted the defendant on both counts. Defendant filed a pro se motion to relieve court appointed counsel due to irreconcilable differences and counsel's allegedly deficient performance at trial. This motion was also denied. (R110-54 & 55).

On April 25, 2003, the court sentenced defendant to a term of 120 months imprisonment as to Count One and a consecutive term of 108 months imprisonment as to Count Two, with both terms to run consecutive to the 21 month term of imprisonment he was then serving on the VOSR. (R110-60). The district court found that pursuant to U.S.S.G. § 2K2.1(a)(2), the defendant's base offense level on Counts

---

[3]During the discussion of Mr. Keith's motion to withdraw, counsel noted his client's heated disagreement with things counsel had done, that certain things that were said by his client made him "feel really uncomfortable," and that he does not ask to be removed from a case often, if ever. The court recognized Mr. Keith's 20 years of experience in this court, the fact that he had dealt with probably thousands of defendants and its confidence that Mr. Keith was in a good position to know whether he was capable of representing a defendant fairly before granting the motion to withdraw. (R110-80 17-20).

One and Two was 24. (R110-85 at 36-37). Of note was the fact that this finding was based on the underlying crimes of conviction and the fact that the defendant had two prior convictions for crimes of violence: an April 7, 1981 conviction for arson and a May 5, 1988 conviction for possession of an unregistered firearm. (R110-85 at 20-23, 28-37). Without these convictions the base offense level would have been 20. Judgment was entered on May 1, 2003 and defendant timely appealed. (R110-60; 64, & 65).

On April 28, 2003, the business day following the oral imposition of sentence and before the judgment was entered, defendant filed a motion to correct sentence in which he argued that his arson conviction should not have been used to increase his base offense level because it was more than 15 years old at the time of sentencing and had not been awarded any criminal history points. U.S.S.G. § 4A1.1 & 4A1.1, n. 1 (R110-59). The government conceded that the arson conviction had been improperly used to increase defendant's base offense level pursuant to § 2K2.1, but argued that in resentencing the defendant, the court should impose an upward departure sentence because the corrected guideline range, a base offense level of 20, did not adequately reflect the seriousness of defendant's criminal history. (R110-62). On May 9, 2003, the district court granted the motion to correct sentence and set the case for resentencing on May 21, 2003. (R110-68-69). On May 19, 2003, the district court sua sponte entered an order vacating its prior order noting that although the parties all agreed that resentencing was warranted, it was without jurisdiction to correct a sentence under Fed.R.Crim.P. 35(a) more than 7 days after the original sentencing. (R110-72). It thus stayed defendant's motion to correct sentencing pending appeal.

Defendant raised the following issues on appeal relative to his convictions and sentence: 1) the district court should have severed the trial on Counts One and Two; 2) the police and the prosecution engaged in misconduct that was prejudicial to him; 3) the district court erred in using the arson conviction that was more than 15 years old to increase his base offense level; 4) the district court erred in

determining that the possession of an unregistered firearm constitutes a crime of violence; 5) in computing the defendant's offense level, the district court should have grouped counts one and two; 6) he should not have received a four-level adjustment for possessing a firearm in connection with an armed robbery.  (R110-94).  On December 29, 2003, the Eleventh Circuit reversed defendant's sentence due to the use of the arson conviction to increase his base offense level, but affirmed the conviction in all other respects.  (R110-94).

On March 25, 2004,[4] the defendant was resentenced to a term of 120 months imprisonment on Count One and a consecutive term of 90 months imprisonment as to Count Two, with both terms running consecutive to the 21 month term of imprisonment imposed for the VOSR.  (R110-97-99).  A notice of appeal and a motion to withdraw as counsel were filed on the same day.  (R110-100, 101).  Counsel's motion to withdraw was granted[5] and Gary Lee Printy, Esq. was appointed to represent defendant on direct appeal.  (R110-107).  On appeal, defendant raised the following issues: 1) 18 U.S.C. § 922(g) is an unconstitutional exercise of power under the Commerce Clause; 2) police and prosecutorial misconduct; 3) the indictment was impermissibly multiplicitous; 4) the district court erred in failing to sever the two charges for trial; 5) Counts One and Two should have been grouped at sentencing; 6) possession of an unregistered firearm is not a crime of violence; 7) the district court erred in departing upward in his second sentencing hearing because the government did not provide the required notice that it was seeking an upward departure; 8) the district court's consideration of the alleged threat defendant made to a probation officer at sentencing was a double jeopardy violation because he was later tried and convicted in a separate proceeding for this offense; 9) the district

---

[4]Defendant filed a motion to vacate pursuant to 28 U.S.C. § 2255 on March 18, 2004, even before he was resentenced.  (R110-96). This motion was summarily dismissed due to the pendency of defendant's direct appeal.  (R110-109, 116, 117).

[5]Counsel indicated that his client was not happy with his services, accused him of working for the government, was highly uncooperative and displayed animosity toward counsel.  (R110-101).

court impermissibly enhanced his sentence in retaliation against him for initiating a successful appeal; and 10) *Booker* error. (R110-129). Claims one through six were rejected as barred by the law of the case doctrine. The other claims were found to be meritless. The defendant filed a petition for writ of certiorari which was denied in October of 2006. (R110-130).

The instant petition was timely filed on September 4, 2007. In Ground One, defendant raises seventeen claims of ineffective assistance of trial counsel, in Ground Two, he raises nine claims of ineffective assistance of appellate counsel, and Grounds Three and Four allege a total of five due process violations, all of which are related to one or more of the ineffective assistance of counsel claims. The government opposes the defendant's motion in its entirety.

### B. Factual Background[6]

On August 18, 2002 the defendant presented at Fort Walton Beach Medical Center with a gunshot wound in his left knee area, claiming to be the victim of an assault by an individual he could only vaguely identify. The apparent trajectory of the bullet did not match defendant's description of the incident. Pursuant to a consensual search, law enforcement officers discovered a live .38 caliber round of ammunition in the defendant's pants. It is this ammunition that was the basis for the charge in Count Two of the indictment.

Shortly before September 9, 2002, the defendant along with Thelma Jane Holt and Scott Bowers made plans to rob a jewelry store to obtain money to post a bail bond for Holt's fiancee Teicher Davis. Holt drove the defendant and Bowers to the jewelry store in a borrowed vehicle, and Bowers went into the store to examine its interior. Upon leaving the store, Bowers got involved in an argument with a person nearby and displayed a handgun to this person.

---

[6]This factual background is summarized from the government's memorandum in opposition to the § 2255 motion. (R110-137 at 7-19). Record citations are not repeated herein.

Holt, the defendant and Bowers quickly left the scene in the vehicle and not long afterwards were apprehended at a convenience store where their presence had been recorded on video camera. A .22 caliber handgun was seized from between the car's front center console and the front passenger seat in which the defendant had been seated. A .25 caliber handgun was seized from a blue bag in the back seat of the vehicle where Bowers had been sitting. Bowers and Holt cooperated with the government and testified that the defendant had possessed the .22 caliber weapon found by the front passenger seat, and Bowers testified that defendant sold him the .25 caliber handgun on August 18, 2002. Bowers also testified that the defendant had accidentally shot himself on August 18, and had not been attacked by a third party.[7]

Defendant testified that the wound to his knee occurred when he was shot during a scuffle with an unidentified individual who approached him in his truck. He denied having told Bowers or Teicher that he had shot himself, denied having discussed or knowing anything about robbing a jewelry store, denied having seen or known there were guns in the vehicle in which he Bowers, and Holt were apprehended until the arrival of law enforcement, and denied having sold or given a gun to Bowers. He also denied knowing that the bullet in his pants pocket on August 18, 2002 was a round of live ammunition, rather than a casing, and denied knowing that it was a violation of his probation to possess a bullet. Defendant admitted that he had tried to sell Bowers some marijuana although testified that he never actually received his money. (Doc. 83 at 140-194).

## II. LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that

---

[7]Bowers also accidentally shot himself on this date, although his wounds were much less serious.

(1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted).

Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

## A.  GROUND ONE:  Ineffective assistance of trial counsel

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993).  The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992).  "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept.*

*of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in

sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle,* 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Thus, the burden of proving constitutional ineffectiveness of counsel is extremely high.

In this case, defendant 's ineffective assistance of trial counsel claim attacks seventeen separate identified deficiencies of counsel, some of which will be grouped for ease in discussion.

<u>The August 18, 2002 shooting injury</u>

Issues 1, 2, 5 and 7 relate to the injury suffered by the defendant on August 18, 2002 and the defendant's version of how that injury occurred. Defendant claims that counsel:

(1) Failed to obtain medical records or interview attending doctor relating treatment the defendant received for a gunshot wound on August 18, 2002.

(2) Failed to obtain a lab report from the FDLE relating to a gun-powder residue test performed on August 18, 2002.

(5) Failed to obtain and review crime scene reports filed by an Okaloosa County Sheriff's Deputy concerning the possession of ammunition charges; and

(7) Failed to object to introduction of hearsay testimony about lab report results from the gun powder residue test and failure to call FDLE lab technician to testify.

Defendant's explanations in support of these grounds for relief are totally conclusory. Although he claims over and over again that he was "prejudiced" by counsel's failings, he offers no support for this repeated statement. He does not suggest what the evidence would have shown or how, if counsel had proceeded differently, the outcome of his case would have been affected. Counsel states in his affidavit that he and his client discussed the idea of calling the doctor who treated the defendant to testify, but that there would have been no probative value in doing so, because the nature of the wound would not have shown whether defendant was shot by an unknown assailant or whether the wound was accidentally self-inflicted. (R110-137, exh. 1 at 2). Likewise, gunpowder residue results would have been inconclusive on the issue of the origin of the wound because under either the defense or the government's theory, the gun was discharged in close proximity to the defendant's leg. (*Id.*) Defendant has failed to show deficient performance or prejudice as to these four claims.

<u>Continuance</u>

In ground three, defendant contends that counsel was ineffective because he failed to request a continuance to investigate "new evidence" that was disclosed by the government ten days before trial. Although defendant does not specify the nature of the new evidence, the evidence in question may have been related to defendant's presence at a second convenience store on the date of his arrest. He does not explain what evidence he believes counsel could have uncovered had he interviewed employees or examined video camera monitors at the time in question.

Counsel states in his affidavit that the only "newly discovered evidence" might have been the *Jencks* material provided by the government several days before trial. Counsel notes that this information was not only provided in a timely fashion, but before it had to be produced under 18 U.S.C. § 3500. Counsel indicates that he and his client had ample opportunity to review the statements before trial and that the defendant never suggested a need for a continuance for his reason. The requested (and denied) continuance based on defendant's illness or injury had nothing to do with "newly discovered evidence." Counsel notes that because the evidence reflected that the defendant stayed in the automobile and never entered the store, there would have been no information to glean from interior video cameras or interviews with store employees. (R110-137, exh. 1 at 2). Defendant has again failed to show constitutionally ineffective performance by counsel.

<u>Impeachment of Witnesses</u>

Grounds 4 and 8 relate to the impeachment of government witnesses. In Ground four, defendant faults counsel with a failure to review the criminal records of Thelma Jane Holt and Scott Bowers so he could properly impeach them about the fact that they had committed federal violations, but not been charged and therefore had an interest in testifying against him.

Counsel states in his affidavit as follows:

**Criminal records were checked on both Bowers and Holt. Cross examination revealed no felony convictions for Bowers, but did reveal a pending felony state charge for aggravated assault with a weapon. Cross examination also indicated an implication that the State did not charge aggravated assault with a firearm, a more severe crime with a mandatory minimum sentence, in exchange for Bowers cooperation against Mr. Pugh. It was also revealed that Mr. Pugh was the main target of law enforcement and Bowers would get some "breaks" if he cooperated against Mr. Pugh. The cross examination was complete to demonstrate that Bowers was given "breaks" if he cooperated. Although there were no questions asked specifically about him not being charged federally, Bowers testified to the extent of what he expected his cooperation would accomplish.**

**Holt's criminal record was checked also. Inquiry was made into whether she had written some bad checks, which she denied. She admitted to a cocaine conviction in Tennessee. She admitted that she was told by law enforcement that they could charge her in the present matter involving Mr. Bowers and Mr. Pugh, and she could lose custody of her kids unless she cooperated. She admitted she initially lied to law enforcement. She admitted she was not charged in the matter and assumed it was because she cooperated (against both Mr. Pugh and Mr. Bowers), and although she was not asked about being charged federally, Holt testified to the extent of what she expected from her cooperation.**

(Doc. 137, exh. 1 at 2). Both witnesses were asked about their criminal histories on the stand. Counsel also brought out prior inconsistencies in their statements to law enforcement during cross examination. The record reflects that Bowers admitted on cross examination that after his arrest law enforcement officers told him that they wanted him to cooperate and be truthful because (defendant) Pugh was the target of their investigation, but even so that the three statements he gave them were inconsistent or not entirely true. (R110-82 at 77-79). Holt also admitted on cross examination that she initially lied to one of the investigating deputy sheriffs (R110-82 at 237-239, 255-256, 269). Furthermore, the issues of assessing witness bias and credibility based on a personal interest in the case or some other reason were also covered by the trial court's standard jury instruction. (R110-84 at 52-54).

In Ground 8, defendant asserts that counsel was constitutionally ineffective for his failure to call either a forensic psychologist or other expert witness in the field of substance abuse to impeach government witnesses' testimony about the affects certain drugs that they used had upon them. Again, this issue was addressed by the court's instructions to the jury. It specifically instructed that "a witness who was using addictive drugs during the time he or she testified about may have an impaired memory concerning the events that occurred during that time." (R110-84 at 54). No expert witness was necessary to testify to this, and counsel's decision not to call such a witness was not unreasonable.

### Prior Convictions

In Ground 6, defendant argues that the government violated the stipulation that he was a convicted felon by eliciting testimony regarding the specific crimes for which he had been convicted. Defendant stated that he was prejudiced because he was "forc[ed] to decide to testify on his own behalf in a desperate effort to convince the jury that the defense was not hiding some prior felony conviction involving a firearm." Defendant seems to suggest that absent this violation of the stipulation, he would not have chosen to testify at trial.

The testimony in question came from witness Bowers, who stated on direct:

Q:    Now, did there come a time when you– the subject of a firearm came up, any type of firearm.

A:    Yes, on the job we had talked about it.

Q:    And – and what did you talk about?

A:    He – he just told me what he had been charged with, and he had just always talked about guns.

Q:    Did there come a time that you purchased a firearm from Mr. Pugh?

A:    Yes ma'am.

Q:    And when was that?

**A:      About a month before we got arrested.**


**(R110-82 at 45-46).**

　　**Counsel indicates in his affidavit that the defendant was correct about the stipulation about the defendant's prior conviction.  (R110-83 at 104-105).  Counsel also did not contest that he did not object to the testimony set forth above.  However, counsel denies that this was the reason for defendant's decision to testify, stating that that decision had been made before trial, as defendant's testimony would be the only way to get in defendant's theory of the offense.  Counsel notes that he and his client even prepped his testimony, (R110-137, exh. 1 at 2), which is further evidence that the decision that defendant would testify was made well in advance of Bowers' allegedly prejudicial testimony.**

　　**After defendant testified on direct examination, outside the presence of the jury, the government confirmed with the district court that it could cross-examine the defendant about his prior felony convictions.  (R110-83 at 193).  The court indicated that there was no doubt that it was entitled to do so.  Defense counsel indicated that his client was aware of that.  (R110-83 at 193-194).  On cross examination, the government asked defendant about his prior convictions.  Defendant initially stated that they were listed on the indictment, but then responded in the affirmative as the AUSA asked him one by one if he was the Brian Pugh who had been convicted of four separate charges, including two charges involving possession of a firearm by a convicted felon.  (R110-83 at 195).  The court stated at the charge conference that in light of the defendant's testimony, there was no need to redact the indictment to eliminate reference to the defendant's prior felony charges.  (R110-83 at 261).**

　　**The defendant's own testimony brought the entirety of his criminal history to the attention of the jury, not counsel's failure to object to Bowers' oblique reference to "charges" defendant had mentioned.  Defendant's contention in his reply that AUSA Spears improperly informed the jury during her opening statement that the defendant had a prior felony conviction is misguided.  A prior felony conviction was**

a necessary predicate for the charges against him.  His assertion that counsel was ineffective is without merit.

<u>Jury Instruction</u>

Ground nine alleges that counsel was constitutionally ineffective because he failed to request a "possession by necessity instruction" as to Count Two of the indictment.  Defendant states that his sole defense to the ammunition possession charge in Count Two was that he had "unknowingly possessed" the .38 caliber round of ammunition after being shot by an unknown assailant.  Defendant misapprehends the "necessity" instruction.  In order to warrant an instruction on the affirmative defense of necessity to a felon in possession charge, the defendant must establish:

> (1) that the defendant or a third person was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law by taking possession of a weapon; and (4) that there was a direct causal relationship between the criminal action — possessing the weapon in violation of § 922(g)(1)—and the avoidance of the threatened harm.

*United States v. Deleveaux,* 205 F.3d 1292, 1297 (11th Cir. 2000); *United States v. White*, 552 F.3d 240, 248–249 (2nd Cir. 2009).  It is true that counsel can be constitutionally ineffective for failing to request a significant jury instruction.  *United States v. Span*, 75 F.3d 1383-1389-90 (9th Cir. 1996); *Freeman v. Class*, 95 F.3d 639, 642 (8th Cir. 1996).  However, in this case there is no factual basis for the defendant's suggestion that his possession of the live bullet was a legal "necessity." Defendant's assertion that he picked the ammunition up off the seat of his vehicle after the alleged assailant had fled utterly fails to establish at least three of the four prongs of the test set forth above.  Thus, counsel was not constitutionally ineffective for his failure to request this instruction, as such a request would have been futile.

The law is well established that counsel is not ineffective for failing to preserve or argue a meritless claim, or in this case make a request for a jury instruction that was not warranted by the record.  *See Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008); see also *Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Chandler v. Moore,* 240 F.3d 907 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence)*; Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

### Failure to object to improper Vouching

Next, defendant asserts that counsel failed to object to the government's unfair "vouching" for the credibility of its witnesses.  Defendant states that he was greatly prejudiced "because there was no other evidence to connect him to the crime charged."

It is error for the prosecution to personally vouch for the credibility of a witness.  *United States v. Diaz,* 190 F.3d 1247, 1254 (11th Cir. 1999); *United States v. Harlow*, 444 F.3d 1255, 1262 (10th Cir. 2006).  Vouching occurs when:

> "[T]he jury could reasonably believe that the prosecutor was indicating a personal belief in the witness's credibility." *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983), cert. denied 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). In applying this test, we look for whether (1) the prosecutor placed the prestige of the government behind the witness by making explicit [personal] assurances of the witness's credibility, or (2) the prosecutor implicitly vouched for the witness's credibility by implying that evidence not formally presented to the jury supports the witness's testimony. *Sims*, 719 F.2d at 377.

*United States v. Cano*, 289 F.3d 1354, 1365 (11th Cir. 2002) (quoting *United States v. Castro*, 89 F.3d 1443, 1457 (11th Cir. 1996)); *Harlow*, 444 F.3d at 1262. Defendant's conclusory assertion of vouching is unsupported by the trial record and fails to meet either prong of this test. None of the government's statements at closing could reasonably be construed as impermissible "vouching" for the credibility of its witnesses. Both the AUSA and defense counsel made argument about the believability or credibility of the various witnesses, and all of these comments were within the realm of proper closing arguments. Defendant has not pointed to a specific instance of improper vouching in the record to support his claim.

<u>Failure to prepare defendant for PSI interview</u>

Defendant next contends that counsel was constitutionally ineffective because he failed to prepare the defendant not to incriminate himself during his post-trial interview with the probation officer. He complains that because counsel was not present during the interview, he answered questions that were irrelevant to the charged conduct, and that had counsel instructed him about his right to remain silent he would not have incriminated himself. He also asserts that as a result, his sentence was enhanced three levels for obstruction of justice based upon alleged threats to an assistant public defender and Deputy U.S. Marshal and battery of a jail cell-mate.

Defendant is correct that the PSR reflects that he admitted threatening Assistant Federal Public Defender Thomas Keith and committing a battery on his cell mate. The PSR also notes, however, that defendant testified falsely as to material facts of this case during his trial. False testimony alone is sufficient to support the obstruction of justice adjustment. At defendant's initial sentencing, the district judge remarked that in seven pages of notes that he had taken about the defendant's testimony, he noted thirty-five instances where defendant had given what the court considered to be false testimony thus constituting obstruction of justice. (R110-85 at 6-7). The court also remarked that its determination that defendant was lying was

confirmed by the jury's verdict, and hence the obstruction of justice adjustment was warranted. (R110-85 at 7).

To the extent that defendant complains about counsel's absence from the pre-sentence interview process, counsel's presence is not constitutionally required. The pre-sentence interview is not considered a critical stage of the proceedings in which counsel's presence or advice is necessary to protect the defendant's right to a fair trial. *Brown v. Butler*, 811 F.2d 938, 941 (5th Cir. 1987); *United States v. Woods*, 907 F.2d 1540, 1543 (5th Cir. 1990); *United States v. Rogers*, 921 F.2d 975, 979 (10th Cir. 1990); *United States v. Leonti*, 326 F.3d 1111, 1119 (9th Cir. 2003); *United States v. Jackson*, 886 F.2d 838, 843-844 (7th Cir. 1989); *United States v. Simpson*, 904 F.2d 607 (11th Cir. 1990) (declining to reach petitioner's claim that he was denied counsel during presentence interview due to petitioner's failure to raise it in the district court, but noting that three other circuits had rejected a similar argument). There being no constitutional requirement that counsel attend, there can be no ineffective assistance of counsel for his failure to do so.

### Failure to investigate prior conviction

Defendant's twelfth and thirteenth claims relate to his 1988 conviction for possession of an unregistered firearm. He contends that counsel failed to properly investigate this conviction and effectively rebut a misrepresentation of law and facts with respect to the conviction. He appears to contend that counsel should have corrected an alleged misconception of the *mens rea* requirements of his previous conviction of violating 26 U.S.C. § 5861(d), claiming that because there was no knowledge or intent requirement at the time of his prior conviction, this conviction should not have qualified as a prior conviction for a crime of violence.

The question of whether possession of an unregistered firearm constitutes a crime of violence was addressed at sentencing (R110-85 at 35-36) and considered on appeal, as the law existed at the time. A district court typically need not reconsider issues raised in a section 2255 motion which have been resolved on

direct appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

In defendant's case the appellate court determined that possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d) is a crime of violence within the meaning of § 2K2.1 of the Guidelines. (R110-94 at 17, citing *United States v. Dwyer*, 245 F.3d 1168 (10th Cir. 2001); *United States v. Rivas Palacious*, 244 F.3d 396 (5th Cir. 2001); *United States v. Dunn*, 946 F.2d 615 (9th Cir. 1991)); see also *United States v. Owens*, 447 F.3d 1345, 1347 (11th Cir. 2006). The Eleventh Circuit also found that there is no *mens rea* requirement for a violation of this section; there is no requirement that the government prove that a defendant knew the firearm in his possession had to be registered. See *United States v. Owens*, 103 F.3d 953, 956 (11th Cir. 1997). In light of the appellate ruling, this claim is foreclosed from reconsideration on collateral attack and he is not entitled to relief.[8]

<u>Grouping of Counts for Sentencing</u>

Claims 14, 15 and 16 all relate to the grouping of Counts One and Two for sentencing purposes. Defendant's claim appears to be that counsel should have

---

[8]Defendant's amended claim, which attacks the validity of this predicate conviction in light of an intervening change in the law, is discussed below.

objected to the failure to group these counts because had he done so, defendant would have received a lesser sentence. Although the Eleventh Circuit's opinion in defendant's direct appeal states otherwise,[9] the PSR reflects that counsel did object to the probation officer's failure to group the counts. See PSR ¶ 120. The probation officer's response was that the "grouping principle is to be applied on a case by case basis, and not all firearms violations committed by an individual in a narrow time frame necessarily involve substantially the same harm." (PSR ¶121). In light of the fact that defendant provided no viable explanation for his possession of the ammunition, and in fact continued to deny his guilt, there was no evident connection between the two counts of conviction. And, as noted by the Eleventh Circuit on appeal, defendant did not demonstrate that the two offenses involved substantially the same harm or that they occurred on the same date such that grouping would have been appropriate. (R110-94 at 18). Additionally, the court notes that this issue was raised and argued extensively at defendant's March 25, 2004 resentencing (R110-119 at 12-21) and rejected again on his second appeal. (R110-129). The fact that defendant was displeased that counsel's argument was not successful does not mean that counsel's performance was constitutionally deficient.

### Failure to request that district court identify examples of material false testimony

Defendant's final claim with respect to the performance of trial counsel is that counsel was constitutionally ineffective when he failed to argue that the district court was required to find that defendant's false testimony was "material" before applying an obstruction of justice adjustment pursuant to § 3C1.1 of the Guidelines. Defendant asserts that the district court's identifying of 35 instances of false testimony, without specifying to which count the alleged false testimony was

---

[9]The appellate court indicated that although it generally reviewed the district court's grouping of offenses de novo, a claim raised for the first time on appeal is reviewed only for plain error.

directed, and without stating whether the false testimony was "material," was insufficient to support the adjustment, and he was therefore prejudiced by counsel's failure to object.

> The guidelines provide for a two-level increase in the offense level:
>
> [i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1 (2005). Perjury, which is among the examples of conduct warranting this enhancement, U.S.S.G. § 3C1.1, comment. (n.4(b)), "has been defined by the United States Supreme Court as 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory,' " *United States v. Singh*, 291 F.3d 756, 763 (11th Cir.2002) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 1116, 122 L.Ed.2d 445 (1993)). While it is preferable that the district court make specific findings as to each instance of obstruction by identifying the materially false statements individually, a "general finding of obstruction of justice that encompasses all of the factual predicates of perjury" is sufficient to support an obstruction of justice adjustment. *United States v. Vallejo*, 297 F.3d 1154, 1168 (11th Cir. 2002) (citing *United States v. Arguedas*, 86 F.3d 1054, 1059 (11th Cir. 1996)). At sentencing, the district court noted that its determination that the defendant was lying was supported by the jury's verdict. (R110-85 at 7; R110-119 at 44, 46);[10] see *United States v. Jimenez-Najera*, 195 Fed. Appx. 911 *2 (11th Cir. 2006) (guilty verdict alone was sufficient to support obstruction adjustment when defendant's testimony was contradicted by that of other witnesses and did not appear to be the result of

---

[10]At defendant's resentencing, the district court noted the other obstruction of justice conduct that needed to be recognized: threats to the deputy U.S. marshal and assistance federal public defender, and the battery committed by defendant upon his cell mate at the jail. (R110-119 at 46).

mistake or confusion); *United States v. Jabbour*, 2006 WL 3369524 (11th Cir. 2006) (false trial testimony sufficient basis for obstruction adjustment, as would be even one perjurious statement).  The fact that counsel did not request the district court to specifically identify the allegedly obstructionist statements was not prejudicial to the defendant, because had he done so the outcome of the proceedings would not have been altered.   Clearly, the fact that the jury's verdict was contrary to defendant's testimony with respect to the possession of ammunition charge was sufficient to sustain the adjustment.

## B.  GROUND TWO:  Ineffective Assistance of Appellate Counsel

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).  However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.  *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130-31 (11th Cir. 1991); *Francois v. Wainwright*, 741 F.2d 1275, 1285 (11th Cir. 1984). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Barnes,* 463 U.S. at 751-52, 103 S.Ct. at 3313.  The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the appellate advocacy, which must be judged in its entirety, was effective.   *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed. 2d 434 (1986).   To determine whether defense counsel rendered ineffective assistance by failing to raise certain issues on appeal, the court must examine the merits of the issues the defendant alleges counsel was derelict in not raising on appeal.  *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988).  Of course, appellate counsel is not ineffective for failing to raise claims "reasonably considered to be without merit."  *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)

(citations omitted); see also *Lambrix v. Singletary*, 72 F.3d 1500, 1507 (11th Cir. 1996); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). And, where the case law at the time of the direct appeal is not clear on an issue, appellate counsel's performance does not fall below the "objective standard of reasonableness" for failing to raise it. *See Jones v. United States,* 224 F.3d 1251, 1258-59 (11th Cir. 2000); *Chateloin v. Singletary,* 89 F.3d 749, 754 (11th Cir. 1996). An informed decision based on reasonable professional judgment not to pursue a particular issue on appeal does not render counsel's performance deficient. See *Griffin v. Aiken,* 775 F.2d 1226, 1235 (4th Cir. 1985).

In his motion, defendant identifies nine alleged deficiencies in the performance of appellate counsel, most of which were also claimed as deficiencies of trial counsel. They will be addressed in turn.

### Failure to properly investigate prior conviction for possession of unregistered firearm

In this claim, defendant makes virtually the identical argument that he made with respect to trial counsel. For the reasons set forth above, he is not entitled to relief on this claim.

### Failure to argue the issue of "grouping" in the Reply Brief on appeal

Defendant claims that counsel was constitutionally ineffective because he failed to argue in his reply brief that, contrary to the government's assertion in its appellate brief, the issue of grouping Counts One and Two for sentencing purposes <u>had</u> been raised before the trial court. While defendant is correct that counsel could have made this argument, no prejudice inured to him from counsel's failure to make it. The trial court thoroughly considered the issue, and found defendant was not entitled to have the two offenses grouped for sentencing. The appellate court reviewed the issue, albeit not under the  standard of review to which defendant might have been entitled, and determined the trial court was correct. Defendant has

not cited, and the court has not found, any law to support his assertion that the offenses should have been grouped in this case. Therefore, counsel's failure to alert the appellate court to the fact that the issue of grouping had been raised in the trial court was not constitutionally ineffective.

### Failure to argue the issue of perjured testimony in reply brief and to review record

Defendant groups together his third and fourth contentions contending generally that counsel failed to properly review the record to support grounds for an appeal, and specifically, that counsel was constitutionally ineffective for his failure to correct the government's suggestion in its appellate brief that the issue of perjured testimony had not been raised at the district court level. He asserts that he suffered prejudice because the Eleventh Circuit applied a more stringent standard of review.

The importance of the standard of review applied by the appellate court is affected by the merits, or lack thereof, of defendant's underlying claim. If the claim has no merit, obviously, the exigency of the standard of review applied will not affect his entitlement to relief. That is the situation in this case. When defendant and trial counsel brought up the matter of prosecutorial misconduct during the grand jury proceedings, the district court indicated that it had looked at the grand jury transcripts and there was "nothing in error before the grand jury." (R110-131, exh. B). Counsel clarified for the court that defendant believed that several government agents knowingly made untrue statements in reporting what Scott Bowers and Thelma Holt had said about the origin of the firearms, that they had come from the defendant. Counsel noted that he personally had reviewed the statements from Bowers and Holt and that Mr. Bowers had either not made that statement (about the firearm coming from the defendant) or it had not been recorded. Counsel further noted, however, that in his opinion, regardless of whether a misstatement occurred, the grand jury would have returned an indictment even without the statements.

The Eleventh Circuit found that the district court did not commit any error, let alone plain error regarding the allegedly false statements or testimony of Bowers and Holt. (R110-94 at 5-6,11). With respect to defendant's *Giglio* challenge to Detective Lio's testimony, the appellate court stated that defendant had failed to establish either that Holt's statement was false and that the police and the government knew it was false. (R110-94 at 5-6). Defendant has not shown that application of a different standard of review would have altered the outcome of his case.

<u>Misadvice concerning evidence and court rulings</u>

Defendant contends that appellate counsel "intentionally and unethically mislead" him by providing false information concerning the outcome of a direct appeal, and about the supporting evidence contained in the trial court records. He claims that he was prejudiced because "he believed counsel and failed to file a Motion to Recall Mandate within the one-year time limitation set by the Rules of the Eleventh Circuit." Defendant's conclusory assertion that the outcome of this case would have been different had he not been "mislead" by his appellate counsel does not entitle him to relief. He offers nothing specific in support of his attack on counsel's integrity, and he does not offer any explanation of the arguments he might have made in a Motion to Recall Mandate that would have changed the outcome of his case. Hence, there was no prejudice.

<u>Failure to raise certain grounds for relief on appeal</u>

Defendant asserts that he was prejudiced by counsel's failure to argue on appeal that his sentence was based on false information, that the government's failure to object to the PSR waived its argument with respect to including another crime of violence for sentencing purposes, and that the government improperly vouched for its witnesses. To the extent that defendant re-argues the *mens rea* issue with respect to his prior conviction for possession of a firearm by a convicted

felon, his argument is misplaced, as set forth above. ***See United States v. Owens***, **103 F.3d 953, 956 (11ᵗʰ Cir. 1997). Thus, counsel was not ineffective for his failure to raise a non-meritorious issue. Likewise, the government did not vouch for its witnesses, and therefore, no prejudice inured from counsel's decision not to pursue this issue on appeal either.**

### Failure to petition for rehearing

**Defendant's last complaint about the performance of appellate counsel is that he failed to petition the Eleventh Circuit for Rehearing or Rehearing en Banc concerning the use of an erroneous standard of review with respect to the grouping of counts for sentencing and the government's allegedly intentional use of perjured testimony.**

**"[T]he right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). The Supreme Court has rejected suggestions that it establish a right to counsel on discretionary appeals. *Id.* Although not binding on this court, the Middle District of Florida has repeatedly recognized that:**

> **"[t]he Sixth Amendment does not guarantee effective assistance in pursuing motions for rehearing after denial of a direct appeal. [T]he right to appointed counsel extends to the first appeal of right, and no further. Thus, the failure of petitioner's counsel to seek rehearing before the [appellate court] cannot constitute ineffective assistance of counsel in violation of the Sixth Amendment."**

***Aguilar v. Unites States,*** **2009 WL 890285 (M.D. Fla. 2006) (quoting *Alley v. Bell*, 101 F.Supp.2d 588, 665 (W.D.Tenn.2000), affirmed, 307 F.3d 380 (6ᵗʰ Cir. 2002), *cert. denied*, 540 U.S. 839 (2003) (citations omitted) (quotations omitted); see also *Hernandez v. Wainwright*, 634 F.Supp. 241, 250 (S.D.Fla.1986), affirmed without opinion, 813 F.2d 409 (11ᵗʰ Cir. 1987) (finding that "a petition for rehearing of an appeal is squarely a discretionary appeal and again is within the purview of the rule**

established in Wainwright v. Torna, [455 U.S. 586, 587-88 (1982)]....")); *Langdon v. United States*, 2007 WL 656460 (M.D. Fla. 2007); *Ucciferri v. United States*, 2006 WL 1281362 (M.D. Fla. 2006); *Polk v. Secretary, Dept. of Corrections*, 2005 WL 1667694 (M.D. Fla. 2005). Absent a constitutional right to counsel in post-appellate proceedings, defendant cannot show that the constitution was offended by counsel's failure to pursue discretionary review either via a motion for rehearing or a petition for certiorari with the Supreme Court. Additionally, although not necessary for the disposition of this claim, defendant has neither shown that he was prevented from filing a motion for rehearing in his own behalf nor offered any meaningful evidence or argument that had a motion for rehearing or a petition for certiorari been filed, such motion or petition would have been granted and the outcome of his case would have changed after the additional review.

## C.  GROUNDS THREE AND FOUR: Due Process violation

Defendant's third and fourth grounds for relief are comprised of five allegations of violations of his right to due process.  The subject of each of the grounds for relief were discussed above with respect to defendant's claims of ineffective assistance of counsel, and no further discussion is warranted herein, as he is not entitled to relief. Additionally, any grounds for relief that were argued on appeal may not be re-litigated herein, as noted supra, and any grounds that could have been, but were not, raised on appeal are procedurally barred.  *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994).

## D.  AMENDED CLAIM–Defendant's prior conviction as crime of violence after *Begay*

In a separately filed amendment to his § 2255 motion, defendant contends that his 1988 firearm conviction is no longer a crime of violence after the Supreme

Court's decision in *Begay v. United States*, 533 U.S. 137, 128 S.Ct. 1581 (2008).[11]  See also *United States v. Archer,* 531 F.3d 1347 (11th Cir. 2008); *United States v. McGill*, 618 F.3d 1273 (11th Cir. 2010).  Thus, he asserts, that  his sentence should be reduced to reflect that he has only a single prior felony conviction for a crime of violence. The government asserts that the defendant's sentence remains proper even in light of the intervening change in the law.

The PSR reflects that the defendant's base offense level for count one was 24 due to his two prior felony convictions for crimes of violence.[12]  (PSR ¶ 28, §2K2.1(a)(2)).  The application note to § 2K2.1 cross references § 4B1.2(a) of the guidelines and the application notes thereto for the definition of "crime of violence." In turn, § 4B1.2 has been consistently interpreted by the Eleventh Circuit as "virtually identical" to the phrase as defined in the Armed Career Criminal Act,  18 U.S.C. § 924(e)(1).  *United States v.  Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (citing cases). The commentary to United States Sentencing Guideline §4B1.2(a) includes as part of its definition of "crime of violence" conduct that "by its nature, presented a serious potential risk of physical injury to another." The "otherwise clause" of the ACCA defines a violent felony as one that "is burglary, arson, or extortion, involves use of explosives, or *otherwise* involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

In determining whether an offense is a violent felony, the sentencing court must consider the offense generically, that is, in terms of how the law defines the offense, rather than how an individual committed the offense on a particular occasion.  *Begay*, 128 S.Ct. at 1584.  *Begay* explained that the "otherwise clause" of the ACCA encompasses conduct that "typically involves] purposeful, 'violent,'

---

[11]The government has not challenged *Begay's* retroactive applicability on collateral review.  Although an Eleventh Circuit opinion holding that it was retroactively applicable was vacated, see *Gilbert v. United States*, 609 F.3d 1159 (11th Cir. 2010), other courts have held that it is.  See e.g., *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010); *Lindsey v. United States*, 615 F.3d 998 (8th Cir. 2010).

[12]With one prior felony conviction for a controlled substance offense or crime of violence the base offense level would have been 20. § 2K2.1(a)(4)(A).

and 'aggressive' conduct" similar to that involved in the offenses enumerated as examples. 128 S.Ct. at 1585-1586. The *Begay* Court did not have occasion to consider firearms offenses, as it was presented with a question regarding recidivist drunk driving. However, shortly after the Supreme Court's decision in *Begay*, the Eleventh Circuit held in *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008), that the offense of carrying a concealed weapon, which previously had been considered a crime of violence,[13] no longer qualified as such under *Begay*. The *Archer* court reasoned that carrying a concealed weapon did not involve the sort of aggressive, violent conduct that is inherent in the specifically enumerated crimes, that it did not necessary involve purposeful conduct, and that it was not "universally considered to be violent." 531 F.3d at 1351. The court also noted that although possession of a firearm by a convicted felon would appear to present a greater potential risk of injury to another than merely carrying a concealed weapon, the former offense was not a crime of violence and therefore the latter offense could not be. *Id.* at 1352.

The predicate convictions defendant now challenges are contained in paragraph 54 of the PSR. Defendant was convicted in the Southern District of West Virginia in 1988 of possession of a firearm by a convicted felon, possession of an unregistered firearm, and possession of a firearm with an obliterated serial number. If none of these offenses is considered a "violent felony," defendant would only have one prior felony for purposes of § 2K2.1. The Eleventh Circuit has recently reiterated the three-part analysis for determining whether a particular conviction is a violent felony. First the court must consider the offense generically, that is how the law defines the offense. *United States v. McGill*, 618 F.3d 1273, 1275 (11th Cir. 2010) (citing *Begay, supra*). Second, the court must determine whether the generic offense "involves conduct that presents a serious potential risk of physical injury to another." *Id.* Finally, if the offense does present such a risk, the court must

---

[13]*See United States v. Gilbert*, 138 F.3d 1371 (11th Cir. 1998).

consider whether it is roughly similar in kind as well as in degree of risk posed to the clause's example crimes. *Id.*

The government argues that the defendant's prior convictions for possession of an unregistered firearm and possession of a firearm with an obliterated serial number pass the *Begay* test. This court disagrees. The overwhelming majority of the cases cited by the government in support of its position were decided pre-*Begay*. In addition, although the government cites *United States v. Archer* for the proposition that carrying a concealed weapon "presents a serious potential risk of physical injury," (doc. 152 at 5), *Archer* ultimately held that carrying a concealed firearm was no longer a crime of violence after *Begay*. 531 F.3d at 1352. More importantly, the analysis and holding in *United States v. McGill*, which had not been decided at the time the government filed its response, is controlling.

In *McGill,* the Eleventh Circuit was presented with the question of whether a prior conviction for knowing possession of a short-barreled shotgun in violation of both Florida and federal law was properly considered a violent felony after *Begay.* The court found that this offense involved conduct that presents a serious potential risk of physical injury to another, citing *United States v. Owens*, 447 F.3d 1345, 1347 (11th Cir. 2006), thus meeting the second step of the *Begay* analysis. With respect to the third step of the violent-felony analysis, the government argued that mere possession of such a prohibited weapon evinced aggressive and violent conduct and relied on an Eighth Circuit case that had so held. 618 F.3d at 1277 (citing *United States v. Vincent*, 575 F.3d 820, 826 (8th Cir. 2009), *cert. denied*, 130 S.Ct. 3320 (2010)). The defendant argued that possession, regardless of the weapon, is a passive crime rather than one that involves overt, aggressive, or violent behavior. 618 F.3d at 1277. In reaching its decision, the *McGill* court compared the statutory treatment of short barreled shotguns and explosives under the ACCA. It concluded that "possession of a short-barreled shotgun is not 'similar in kind' to 'use of explosives,' its closest enumerated analog, or to the other crimes listed in the ACCA's residual clause." 618 F.3d at 1277. The court reasoned that it could not "classify *possessing* one type of

NFA outlawed weapon [short barreled shotgun] as a felony when the ACCA speaks only to the *use* of another [explosives]." 618 F.3d at 1279. It therefore held that the defendant's possession of an outlawed short-barreled shotgun failed *Begay*'s third analytical step. Cf. *United States v. Vincent*, 575 F.3d 820, 826 (8th Cir. 2009) (reaching the opposite conclusion and finding that the inherent risks posed by sawed-off shotguns render their possession "crimes of violence" under the guidelines and the ACCA).

The National Firearms Act, in addition to regulating the making and transfer of short-barreled shotguns and explosives, also proscribes the possession of unregistered firearms or those with the serial numbers obliterated. 26 U.S.C. § 5861. There do not appear to be any post-*Begay* cases that have specifically considered the issue of whether possession of a firearm with an obliterated serial number is a crime of violence. With respect of unregistered firearms, however, the Tenth Circuit specifically found in *United States v. Serafin*, 562 F.3d 1105 (10th Cir. 2009), that possession of an unregistered weapon in violation of 26 U.S.C. § 5861(d) is not a crime of violence. That court reasoned that "the unlawful act of possession does not 'by its nature' involve a substantial risk that physical force will occur in the course of committing the offense." *Id.* at 1114.

The Eighth Circuit's focus on the risks that could result from possession of an NFA prohibited weapon is not unreasonable. However, the fact remains that possession of a firearm, even one prohibited by the NFA, is not in and of itself aggressive, violent conduct. *McGill* and *Serafin* support the conclusion that after *Begay*, convictions for either possession of an unregistered firearm or for possession of a firearm with an obliterated serial number are not violent felonies. Therefore, if the defendant in this case has only one prior violent felony conviction, his base offense level under guidelines § 2K2.1(a) should have been 20 rather than 24, and he is entitled to resentencing. §2K2.1(a)(2) & (4).

## III. Certificate of Appealability

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

In this case, the undersigned recommends that relief be granted and the defendant be re-sentencing. This ruling is not adverse to the defendant. It has also recommended that relief be denied on the remainder of the defendant's claims. To the extent a certificate of appealability would be required at this juncture, the court finds after review of the record, that there was no substantial showing of the denial of a constitutional right with respect to the remaining claims. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability as to any of defendant's unsuccessful claims.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 131) be GRANTED as to defendant's claim that he is entitled to re-sentencing due to a reduction in the number of prior convictions for "crimes of violence" after the Supreme Court's decision in *Begay*; and

The motion to vacate be DENIED with respect to all other claims.

At Pensacola, Florida, this 18th day of February, 2011.



**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).